# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| BLANCHE C. MADISON, ADMINISTRATOR OF THE ESTATE OF EDGAR L. MADISON, DECEASED | CASE NO. 6:12-cv-00028 |
| *Plaintiff,* | |
| | MEMORANDUM OPINION |
| v. | |
| MEDARDO ACUNA ET AL., | JUDGE NORMAN K. MOON |
| *Defendants.* | |

Blanche C. Madison ("Plaintiff"), in her capacity as the administratrix of the estate of her deceased husband, Edgar L. Madison ("decedent"), filed her complaint in this wrongful death action on June 19, 2012. Thereafter, on July 20, 2012, Defendants Medardo Acuna ("Mr. Acuna"), Metro Truck and Tractor Lease, Inc. ("Metro"), and Coastal Sunbelt Produce Company ("Coastal") all filed partial motions to dismiss for failure to state a claim upon which relief can be granted.[1] The parties have briefed the issues presented by the motions, and the matter was set for a hearing on August 30, 2012. However, a hearing is unnecessary; for the reasons that follow, I will grant Defendants' motions.[2]

---

[1] The parties do not dispute the fact that Defendants are citizens of Maryland and that Plaintiff is a citizen of Virginia. Therefore, the parties' citizenship is completely diverse and the Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332.

[2] Upon reviewing the pleadings and briefs submitted by the parties to date, I find that oral argument would not aid the decisional process. Accordingly, I will resolve the motions without holding a hearing. *See* W.D. Va. Civ. R. 11(b) ("In accordance with Federal Rule of Civil Procedure 78(b), the Court may determine a motion without an oral hearing.").

## I. BACKGROUND

The complaint's factual allegations, which must be taken as true at this point, are as follows. Early in the morning on July 6, 2011, Brandon Matheney, with decedent as his passenger, was driving a pickup truck northeast on State Route 42 in Rockbridge County, Virginia. At the same time, Mr. Acuna was driving southwest on the same road in a truck owned by Metro and being leased from Metro by Mr. Acuna's employer, Coastal. Mr. Acuna, who Defendants admit was acting within the scope of his employment as a truck driver for Coastal, was transporting commercial goods from Maryland to Virginia. Plaintiff contends that, at approximately 6:20am, Mr. Acuna negligently crossed the road's solid double-yellow line. Mr. Acuna's truck struck the vehicle in which decedent was a passenger. Decedent sustained severe injuries that ultimately, though not instantly, proved to be fatal.

According to Plaintiff, prior to the aforementioned collision, Mr. Acuna had traveled this same route in the course of his employment with Coastal three times a week for approximately three years. Plaintiff claims that, over the course of those three years, various law enforcement officials stopped Mr. Acuna at least three times and issued him a total of five summonses, including one for reckless driving following a different accident. Plaintiff maintains that both Coastal and Metro were aware (or should have been aware) of Mr. Acuna's poor driving record and unsafe driving habits. Plaintiff filed this suit to recover damages from Defendants.[3]

In her complaint, Plaintiff lists just one count for "wrongful death" as to all Defendants. She alleges that Mr. Acuna breached the duty he owed to decedent to operate his vehicle in a safe manner and that his negligence in driving the truck was the proximate cause of decedent's death. Further, Plaintiff claims that Coastal and Metro are both liable for Mr. Acuna's

---

[3] Specifically, Plaintiff seeks $2 million in compensatory damages from Defendants, jointly and severally. In addition, Plaintiff alleges that Mr. Acuna's conduct exhibited a conscious disregard for the safety of others. Accordingly, she also seeks $350,000 in punitive damages from Defendants, jointly and severally.

negligence on the basis of respondeat superior.   Separately, Plaintiff asserts that Coastal breached its duty to ensure that its employees operate vehicles on its behalf in a safe manner and that Metro breached its duty to ensure that those who operate its vehicles do so in a safe manner. Finally, Plaintiff maintains that she and her four children qualify as statutory beneficiaries under Virginia's wrongful death statute, Va. Code § 8.01-53.

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).  In considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and must draw all reasonable inferences in favor of the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Legal conclusions in the guise of factual allegations, however, are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679–81 (2009).

Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and internal quotation marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*  In other words, Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

## III. DISCUSSION

It is well-established that federal courts sitting in diversity apply the substantive law of the forum state, including the forum state's choice of law rules. *See Salve Regina Coll. v. Russell*, 499 U.S. 225, 226 (1991) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). In Virginia, the substantive law of the place of the wrong governs the proceeding. *See Frye v. Commonwealth*, 345 S.E.2d 267, 272 (Va. 1986). Decedent suffered his injuries in Virginia. Therefore, Virginia's law of negligence applies, and with it serving as a backdrop, I proceed to a discussion of the issues raised by Defendants in their partial motions to dismiss.

### A. Respondeat Superior

There is no debate regarding the fact that Plaintiff has adequately stated a claim for recovery from Coastal, Mr. Acuna's employer, under the doctrine of respondeat superior. However, Defendants contend that Metro, the owner of the truck driven by Mr. Acuna and leased by Coastal, cannot be liable for decedent's death pursuant to that doctrine. Under respondeat superior, an employer may be held vicariously liable for the tortious acts of its employee, so long as the employee was conducting business on behalf of his employer and acting within the scope of his employment at the time he committed the acts. *See Plummer v. Ctr. Psychiatrics, Ltd.*, 476 S.E.2d 172, 173 (Va. 1996); *see also Hughes v. Doe*, 639 S.E.2d 302, 304 (Va. 2007) ("[T]he crux of respondeat superior liability is a finding that the employee was negligent."). In the case at hand, Defendants argue, there can be no master-servant relationship between Metro and Mr. Acuna given the fact that the only relationships alleged are an employer-employee relationship (between Coastal and Mr. Acuna) and a lessor-lessee relationship (between Metro and Coastal).

Plaintiff rejoins by asserting that the application of respondeat superior is not confined to the employer-employee context.  Plaintiff is correct; while respondeat superior typically applies within such a context, it can operate in settings beyond formal employment.  *See, e.g.*, *Black's Law Dictionary* (9th ed. 2009) (defining respondeat superior as "[t]he doctrine holding an employer or principal liable for the employee's or agent's wrongful acts committed within the scope of the employment or agency.").  However, in her complaint, Plaintiff neither explicitly nor implicitly alleges that Mr. Acuna was acting as an agent or servant of Metro when he crashed the truck into the vehicle in which decedent was riding.  Indeed, all Plaintiff seems to have alleged is that Metro was aware that Mr. Acuna was operating one of its vehicles through its lessee, Coastal, and that Mr. Acuna had a spotty driving record.  As such, Plaintiff has failed to plead sufficient facts to state a claim against Metro on the basis of respondeat superior.  Accordingly, I will grant Defendants' partial motion to dismiss that claim.

### B. Negligent Supervision

Defendants argue that, to the extent Plaintiff's complaint is construed to be asserting a cause of action for negligent supervision against Metro or Coastal, such a claim is not recognized under Virginia law.  Curiously, Plaintiff disclaims that she is alleging negligent supervision on the part of either Coastal or Metro, but she then drops a footnote in her opposition brief in which she points to three relatively dated Virginia circuit court cases that purportedly recognized such a cause of action.  Ultimately, Plaintiff is incorrect.  *See, e.g.*, *Hesse v. Long & Foster Real Estate, Inc.*, No. 1:11cv506, 2012 WL 1427793, at *3 (E.D. Va. April 23, 2012) ("[N]egligent supervision is not a cognizable cause of action under Virginia law.") (citing *Chesapeake & Potomac Tel. Co. v. Dowdy*, 365 S.E.2d 751, 754 (Va. 1988)).  Therefore, to the extent that

Plaintiff seeks relief from Defendants under a theory of negligent supervision, such a claim shall be dismissed with prejudice.

### C. Negligent Retention and Negligent Entrustment

In her opposition brief, Plaintiff argues that, even if negligent supervision is not cognizable under Virginia law, Virginia does recognize the torts of negligent retention, *see Se. Apartments Mgmt., Inc. v. Jackman*, 513 S.E.2d 395, 397 (Va. 1999), and negligent entrustment, *see Hack v. Nester*, 404 S.E.2d 42, 43 (Va. 1990).  To be sure, Plaintiff is correct that these theories of liability are cognizable under Virginia law.  Moreover, it would seem that, with a properly laid factual foundation, a negligent retention claim might lie against Coastal (for having continued to employ Mr. Acuna) and a negligent entrustment claim might lie against Metro (for having permitted Mr. Acuna to operate one of its trucks).  However, the problem is that, aside from her allegations regarding respondeat superior liability, Plaintiff simply alleges that Coastal and Metro breached their duties.  In other words, she does not specifically allege that their breaches were proximate causes of decedent's death.  Such an omission in itself is fatal to Plaintiff's ability to pursue such claims.  *See, e.g.*, *Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc.*, 624 S.E.2d 55, 62 (Va. 2006) (stating that one of the elements of an action in negligence is a showing that the defendant's breach of a given legal duty was the proximate cause of the injury alleged).

Ultimately, the threadbare allegations presented by Plaintiff are not enough to support claims for negligent retention and negligent entrustment, which, I note, Plaintiff fails to even mention in her complaint as theories of liability or counts.  Perhaps Plaintiff can set forth sufficient facts in an amended complaint to support claims for negligent retention and negligent

entrustment.  Until she does so, however, she cannot proceed on these alternate theories of liability simply because she has raised them, for the first time, in her opposition brief.

### D. Punitive Damages

Finally, Defendants argue that Plaintiff should be barred from seeking punitive damages based on the facts she has alleged.  The Supreme Court of Virginia has "repeatedly stated that an award of punitive damages is not favored generally because punitive damages are in the nature of a penalty and should be awarded only in cases involving the most egregious conduct." *Bowers v. Westvaco Corp.*, 419 S.E.2d 661, 668 (Va. 1992) (citations omitted).  In order to justify an award of punitive damages, therefore, a defendant's acts must constitute "willful or wanton conduct, or such recklessness as evinces a conscious disregard for the safety of others." Va. Code § 8.01-52(5); *see also Woods v. Mendez*, 574 S.E.2d 263, 268 (Va. 2003) ("A claim for punitive damages at common law in a personal injury action must be supported by factual allegations sufficient to establish that the defendant's conduct was willful or wanton.") (citations omitted).  With respect to willfulness or wantonness, the Supreme Court of Virginia has stated:

> In order that one may be held guilty of wilful [sic] or wanton conduct, it must be shown that he was conscious of his conduct, and conscious, from his knowledge of existing conditions, that injury would likely or probably result from his conduct, and that with reckless indifference to consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injurious result.

*Thomas v. Snow*, 174 S.E. 837, 839 (Va. 1934).[4]

In support of their contention that Plaintiff's claim to punitive damages should be dismissed, Defendants cite *Puent v. Dickens*, 427 S.E.2d 340 (Va. 1993).  In that case, an

---

[4] The Supreme Court of Virginia has further observed that "willfulness and wantonness convey the idea of purpose or design, actual or constructive." *Boward v. Leftwich*, 89 S.E.2d 32, 35 (Va. 1955).  Put differently, "[w]illful and wanton negligence, unlike gross or ordinary negligence, requires an actual or constructive consciousness that injury will result from the act done or omitted." *Alfonso v. Robinson*, 514 S.E.2d 615, 618 (Va. 1999) (citations omitted). That being said, it should be noted that "ill will is not a necessary element of willful and wanton negligence." *Id.* (citations omitted).

intoxicated man, who was driving a pickup truck, rear-ended another vehicle at a high rate of speed after not attempting to stop, causing injuries to a passenger in the struck vehicle. *Id.* at 341–42. Following discovery, the trial court granted the defendant's motion to strike the plaintiff's claim for punitive damages. *Id.* at 341. On appeal, the Supreme Court of Virginia affirmed, holding that the facts were insufficient to support a finding of the sort of wanton negligence necessary for an award of punitive damages. *Id.* at 342. Defendants argue that, if the facts of *Puent* could not as a matter of law support an award of punitive damages, then the facts presented by the instant matter, which paint the picture of a relatively standard head-on motor vehicle collision, similarly could not support such an award. Indeed, the Supreme Court of Virginia has expressed a "general reluctance to allow punitive damages in run-of-the-mill personal injury cases." *Booth v. Robertson*, 374 S.E.2d 1, 3 (Va. 1988). I note that, even in motor vehicle accident cases that would appear far from ordinary, the Supreme Court of Virginia has exhibited its disinclination towards sanctioning punitive damages awards. *See, e.g.*, *Harris v. Harman*, 486 S.E.2d 99, 100 (Va. 1997) (concluding as a matter of law that the defendant's conduct did not rise to the level of willful and wanton negligence despite the fact that the defendant had been tailgating the plaintiff's vehicle while travelling 10 to 30 miles per hour over the applicable speed limit); *Clohessy v. Weiler*, 462 S.E.2d 94, 96 (Va. 1995) (finding that the defendant had not acted willfully and wantonly even though she was speeding and driving without her headlights on and with a fogged windshield when she hit a pedestrian walking in the street); *Hack*, 404 S.E.2d at 45 (reversing jury award of punitive damages despite evidence that the defendant, who was intoxicated and suffering from night blindness, had been driving with a burned out headlight).

In response, Plaintiff correctly points out that the foregoing cases were all decided after discovery had been conducted and not at the motion to dismiss stage.  According to Plaintiff, she has set forth sufficient facts to proceed on her claim to punitive damages, and that at the very least, she should be permitted to conduct discovery before her ability to recover such damages is foreclosed.   In support thereof, Plaintiff cites several different cases, which I discuss in chronological order.

In *Lucher v. Hildenbrandt*, 794 F. Supp. 581, 584 (E.D. Va. 1992), the district court, applying Virginia law, denied the defendants' motion to dismiss the plaintiff's claim to punitive damages.  However, I observe that the facts alleged by the plaintiff in that case are more egregious than those presented by the instant matter, and therefore distinguishable.  In *Lucher*, the plaintiff was among several passengers in a car being driven by one of the defendants.  *Id.* at 582.  She alleged that the defendant was driving well in excess of 60 miles per hour down a steep, curved road in a neighborhood section of Virginia Beach, Virginia while she and other passengers, who feared an accident would ensue, voiced their apprehension and protest.  *Id.* Ultimately, the vehicle veered off the road and crashed into a tree, injuring the plaintiff.  *Id.* According to the court, the plaintiff had successfully alleged that the defendant knew that he was endangering the safety of his passengers, and that in doing so, the defendant was acting in conscious disregard of their right to be safe as passengers and with reckless indifference to their well-being.  *Id.* at 583–84.

With respect to Virginia state court cases, Plaintiff cites only *Alfonso v. Robinson*, 514 S.E.2d 615 (Va. 1999).  Once again, I find the facts presented by *Alfonso* to be more obviously egregious than those alleged in the case at hand.  In *Alfonso*, the defendant was driving a tractor-trailer on a dark stretch of Interstate Route 95 shortly after midnight when the truck stalled, thus

preventing the defendant from maneuvering it completely off the road. *Id.* at 616. Instead, the defendant was only able to move the truck over to the right-hand lane. *Id.* Without activating the truck's flashing hazard lights or setting up any flares or reflective triangles, the defendant left the scene and ran to a nearby rest stop in order to call to have the truck towed. *Id.* at 616–17. Shortly thereafter, the plaintiff, who was driving nearly 60 miles per hour in the right-hand lane, came upon the truck. *Id.* at 616. By the time she realized it was stationary, she was incapable of veering out of its way before striking it and sustaining serious injuries. *Id.* On cross-examination at trial, the defendant testified that he had previously been trained to place flares or reflective triangles near the truck in such a situation. *Id.* at 617. At the end of the plaintiff's case, and again after both sides had rested, the defendant moved to strike the plaintiff's evidence with respect to punitive damages, arguing that his conduct did not rise to the requisite level of willfulness and wantonness. *Id.* However, both times the trial court denied the motions. *Id.* Ultimately, the Supreme Court of Virginia affirmed, noting that the defendant "was a professional driver who had received specialized safety training warning against the very omissions he made prior to the accident." *Id.* at 619. The court went on to state that "[s]uch evidence that a defendant had prior knowledge or notice that his actions or omissions would likely cause injury to others is a significant factor in considering issues of willful and wanton negligence." *Id.*[5] According to the court, the question of willful and wanton negligence in *Alfonso* was properly put to the jury. *Id.*

---

[5] In the instant matter, there has been no allegation that Mr. Acuna had been put on notice in an analogous fashion. Indeed, the only fact that could be construed to have potentially invested Mr. Acuna with some degree of prior knowledge that his actions or omissions could cause injury to others is that he received summonses for driving violations at various unspecified points during the three years prior to the collision with the vehicle in which decedent was riding. And yet Plaintiff has not alleged that Mr. Acuna was specifically warned on any of those occasions about the potential consequences of his driving. Further, the temporal proximity between the summonses Mr. Acuna received and the accident around which this action revolves remains unstated. In *Alfonso*, the defendant had undergone specific training and he knew what the ramifications of not following what he learned could be. On the basis of the facts alleged in the instant matter, however, it can be inferred that Mr. Acuna had, *< continued . . . >*

In her opposition brief, Plaintiff also cites two cases previously decided by me.  In *Baker v. Oliver*, No. 3:06-CV-00015, 2006 WL 1700067 (W.D. Va. June 15, 2006), I confronted facts similar to those presented to the Supreme Court of Virginia in *Alfonso*.  Around 3am, the defendant stopped the black tractor-trailer he was operating along a dark stretch of U.S. Route 522 and backed up into a private driveway in order to turn around.  *Id.* at *1.  In doing so, the defendant failed to use his turn signals or his flashing hazard lights.  *Id.*  He then pulled out into the road despite the oncoming headlights of the plaintiff's vehicle.  *Id.*  The plaintiff did not have time to stop before striking the tractor-trailer.  *Id.*  Ultimately, I decided to deny the defendants' motion to dismiss the plaintiff's claim to punitive damages, reasoning that the facts were similar to those in *Alfonso*, and therefore that it would be improper to grant the defendants' motion before permitting the parties to conduct discovery.  *Id.* at *2.

Plaintiff also points to my opinion in *Jones v. Miller*, No. 6:06-CV-00014, 2006 WL 1867321 (W.D. Va. June 30, 2006), in which I similarly denied the defendant's motion to dismiss the plaintiff's claim to punitive damages.  In *Jones*, a wrongful death action, the defendant driver struck and ran over a pedestrian walking near U.S. Route 29 South in Lynchburg, Virginia.  *Id.* at *1.  The plaintiff alleged that the defendant's failure to keep a proper lookout, to maintain proper control of her vehicle, to yield, and, especially, to remain at the scene of the accident while the plaintiff's decedent laid in the road with severe injuries amounted to willful and wanton conduct demonstrating a conscious disregard for the safety of others.  *Id.*  In denying the defendant's motion to dismiss, I wrote:

> At the motion to dismiss stage, before all of the facts surrounding the accident have been developed, it is premature to conclude that [the defendant]'s alleged conduct does not meet Virginia's standard for punitive damages.  Facts that 'could be proved' supporting the allegations concerning [the defendant]'s driving

---

< **. . . *continued*** > at best, only marginally more prior knowledge than any other motorist that reckless or negligent driving could potentially lead to others' harm.

that night—particularly the allegation of leaving the scene after striking and severely injuring [the plaintiff]'s decedent—could very well demonstrate misconduct, malice, or willful and wanton recklessness of the requisite degree.

*Id.* at *2 (citations omitted). *Id.*[6]

Finally, Plaintiff cites *Stanley v. Star Transport, Inc.*, No. 1:10CV00010, 2010 WL 3433774 (W.D. Va. Sept. 1, 2010). In *Stanley*, the plaintiff alleged that a tractor-trailer operated by the defendant struck the plaintiff's decedents' vehicle while it was parked along the side of an interstate highway during a snowstorm. *Id.* at *1. The plaintiff sought punitive damages on the ground that the defendant, who was a professional truck driver, acted willfully and wantonly by driving his truck at night during a snowstorm, at an excessive rate of speed, without a functioning collision warning system, and while he was sleep-deprived. *Id.* The court ruled that, while the plaintiff might not ultimately have proof of punitive damages, the allegations were sufficient to defeat the defendants' motion to dismiss. *Id.*

Ultimately, "[e]ach case raising an issue of willful and wanton negligence must be evaluated on its own facts, and a defendant's entire conduct must be considered in determining whether his actions or omissions present such a question for a jury's determination." *Alfonso*, 514 S.E.2d at 618. After considering the foregoing cases, I find that, on the basis of the facts alleged, Defendants' motion to dismiss Plaintiff's claim to punitive damages should be granted. While Plaintiff is correct that, at this juncture, she need not prove that Mr. Acuna drove the truck in a willfully and wantonly negligent manner, it is incumbent upon her to set forth sufficient facts to state such a claim, and yet she has failed to do so. As opposed to the complaints being considered in *Lucher*, *Baker*, *Jones*, and *Stanley*, there are simply no allegations in Plaintiff's complaint that would indicate that Mr. Acuna's asserted negligence amounted to anything

---

[6] Briefly, I point out that I decided both *Jones* and *Baker* before the Supreme Court of the United States handed down the seminal pleading standards cases of *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

beyond what courts routinely confront in head-on vehicle collisions.  In other words, Plaintiff has not set forth allegations to support an inference that Mr. Acuna acted with indifference to other motorists' safety or that he had actual or constructive consciousness that injury would result from his conduct.

Separately, I note that, in seeking punitive damages, Plaintiff merely states: "[Mr. Acuna] acted willfully and wantonly, and his actions demonstrate a conscious disregard for the safety of others, thereby entitling the statutory beneficiaries to an award of punitive damages."  Compl. ¶ 23.  In so pleading, Plaintiff has, in a conclusory fashion, simply tracked the language used by the Supreme Court of Virginia when it discusses the requisite showing for an award of punitive damages.  As such, Plaintiff has run afoul of the prescription for fact pleading enunciated by the Supreme Court of the United States.  *See Twombly*, 550 U.S. at 555; *see also Brown v. Cox*, No. 2:11cv184, 2011 WL 5438610, at *2 (E.D. Va. Nov. 8, 2011) ("To properly plead a claim for punitive damages, a plaintiff must allege sufficient facts to plausibly demonstrate such willful and wanton conduct.  Mere conclusory legal statements, without facts to support them, will not suffice.") (citing *Young v. City of Mt. Ranier*, 238 F.3d 567, 577 (4th Cir. 2001)).  At the motion to dismiss stage, the question is whether the plaintiff has nudged her claim across the line of plausibility.  Here, with respect to her claim to punitive damages, I find that Plaintiff has not yet done so.

## IV. CONCLUSION

For the foregoing reasons, Defendants' partial motions to dismiss shall be granted.  Accordingly, Plaintiff's claim that Metro is liable under respondeat superior shall be dismissed without prejudice, as will Plaintiff's claim to punitive damages as to all Defendants.  In addition,

to the extent that Plaintiff alleges negligent retention or negligent entrustment, those claims shall also be dismissed without prejudice.  Plaintiff's claim for negligent supervision, if she in fact intended to bring it, shall be dismissed with prejudice.  Finally, Plaintiff shall be granted leave to file an amended complaint if she so desires.  Because oral argument on Defendants' motion is unnecessary, the Clerk of the Court shall be directed to cancel the hearing presently scheduled for August 30, 2012.  An appropriate order accompanies this memorandum opinion.

The Clerk of the Court is hereby directed to send a certified copy of this memorandum opinion and the accompanying order to all counsel of record.

Entered this __28th__ day of August, 2012.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE